TEVA PHARMA v. ASTRAZENECA PHARMA TEVA PHARMA v. ASTRAZENECA PHARMA Mr. Blake. Thank you, your honor. May it please the court. This appeal boils down to two issues relating to the validity analysis under section 102G. First, the district court improperly defined the invention as a threshold matter by ignoring manifest material limitations of the claims in section 102G. Why is that relevant in light of the concession of infringement? The concession of infringement, your honor, establishes identity of invention, and we're willing to agree to that, but AstraZeneca still needed to prove that they had priority under section 102G. They still need to prove, in essence, that there is priority and they were first, and to do so, they need to go through the 102G analysis. Although there's identity, you still need to prove conception, reduction of practice, reasonable diligence, and that they did not abandon, suppress, or conceal. And here, the issues relate specifically to whether or not they conceived. But you're not, you conceded the point of infringement for purposes of making this motion, so the distinction in whatever composition that you're selling with respect to the claimed elements is no longer really relevant. It's just simply a stabilized compound. Respectfully, your honor, Teva would disagree. You can concede that there's identity, that the products match up to the claim limitations, but that does not allow you through that type of a legal maneuver to then establish that you have priority because you had conception, reduction to practice. You still have to go through the steps, respectively. There's not an argument as to whether there's identity, but there's still an argument as to whether or not you conceived and you appreciated the invention. Respectfully, a legal maneuver like a limited concession or infringement on summary judgment cannot establish that you appreciate every element of the invention. The court, the district court, still needed to identify what the invention was and then decide, did AstraZeneca conceive of it, reduce it to practice? But if I understand Silvestri and some of these other cases correctly, you don't have to appreciate all the claim limitations. In fact, Silvestri seems to say that explicitly, that the invention is defined more broadly than that. Here, they had the compound. The question is, did they appreciate that it would have a stabilizing effect? Yes, they appreciated it had a stabilizing effect. The cases seem to suggest you don't have to understand exactly how it works as long as you have the compound and you appreciate that it works for the intended purpose. Why is that wrong? What Silvestri says, and later Hitzman v. Rutter builds on part of Silvestri, Silvestri says two things. First, it says the putative prior inventor in a 102G context doesn't have to understand it in the exact same language as the claim and the patent recites it, but it still has to understand it to be the same thing covered by the meets and bounds of that claim or the multiple claims. Here, there are four claims in issue. In other words, the other person doesn't have to understand A, B, C, D in exactly the same words, but if A, B, C, and D define the meets and bounds of the claim, the putative prior inventor still has to prove that they conceived and appreciated something that meets, that's a poor choice of words, but establishes those meets and bounds of the claim. The claim itself establishes the invention. That's a well relied upon axiom of patent law. And you look at the totality of the claim and what did it say? Here, the totality of the claim said there's a stabilized pharmaceutical composition containing a statin as a second element. Third, that there's a stabilizing effective amount of an amino or amino group containing polymeric compound. I'll just refer to it as compound A so I don't have to say that over and over. And fourth, that there's not a stabilizing effective amount of another stabilizer. So Vestry would say that AstraZeneca has to realize and appreciate, recognize and appreciate, that everything is there of those four limitations, just not in exactly the same words. But you agree that the compound that AstraZeneca started with is the same as the compound reflected in the claims here, right? The limited concession of infringement establishes identity factors. So we're talking solely about appreciation, right? Correct. So the question is what do they have to appreciate? And they did appreciate that this compound would have a stabilizing effect, correct? They appreciated that they had a stabilized compound, yes. Okay, so why did they have to have more than that? Because there are structural limitations in the claim that the stabilization, the property of being stabilized was accomplished by having a stabilizing effective amount of A and not a stabilizing effective amount of any other known stabilizer. And those elements, it's clear from the record, AstraZeneca did not appreciate, have a specific appreciation of those elements. The district court found that AstraZeneca to this day will say that they don't think it actually works that way, that you have a stabilizing effective amount of A and not a stabilizing effective amount of anything else. They will say, we don't think it works that way. So they necessarily don't have that type of a specific appreciation. In the Dow case, which relied on and quoted Silvestri, the court said that prior invention does not require that a prior inventor establish that he recognized the invention in the same terms as those recited in the count. The invention is not the language of the count, but the subject matter thereby defined. Yes, Your Honor. So is it Judge Dyke correct in saying that the only thing at issue here is the question of anticipation of a stabilized statin? Respectfully, no. The subject matter thereby defined is the key portion of that. The subject matter thereby defined is what is defined by the meets and bounds of the claim. And here, the subject matter thereby defined is more than a stabilized pharmaceutical composition. The PTO would not have given us a patent on just a stabilized composition containing a statin. That had been known for some time. A focus in the prosecution and the reason our claims are drafted that way is this is a new form of a known composition. This is a stabilized pharmaceutical composition containing a statin that is stabilized with the structural limitations of having a stabilizing effective amount of A and not a stabilizing effective amount of another stabilizer. Those latter limitations are what add to the prior art and therefore AstraZeneca was required. Again, going back to my initial question, you know, you argue it has a stabilizing amount of compound A and not compound B. But doesn't your concession on infringement take that off the table? Because you're not arguing that the compound you're selling has a stabilizing amount of A and not B. It does establish identity of invention. It does not establish, the concession of infringement does. It does not establish that when you look at the properly defined invention to have those elements that AstraZeneca appreciated, and for conception you need appreciation, the case law is clear, it does not establish that AstraZeneca appreciated that you had to have a stabilizing effective amount of A and not of anything else. This is akin to the Invitrogen versus Klontek case where the court was looking at the limitations and found the invention had originally been defined improperly to leave out a limitation when you were talking about having one limitation and not another. There you're talking about a genetically modified enzyme and the court said the invention should be defined to have a DNA polymerase activity but not an RNA activity. But Invitrogen is a little different and in that case the inventor wasn't even able to define the compound itself. But here there's no question that there's a stabilized statin based on the concession of infringement. So it seems to me this is more akin to Dow and Silvestri than Invitrogen. But even in Dow, your honor, appreciation of the invention was required. I mean the ultimate finding of Dow is that both parties did appreciate the fact of what they had made. Which in this case would simply mean an appreciation that there is a compound which is a stabilized statin. Respectfully in this case it would be a stabilized statin with the structural limitations of having an effective amount of A and not of B. And the district court did not require them to prove the final two parts of the claim. The district court in effect let them sidestep that amount of appreciation by finding inherency. And this court's law in Hitzman v. Rudder and that builds on Silvestri itself states that inherency is not a concept that applies in Section 102G analysis normally. Inherency should rarely if ever be applied. And the district court gave them an out by not requiring appreciation. Inherency only applies in certain specific circumstances that are not met here. Going back a second to Invitrogen, that was accidental unappreciated anticipation. He makes a hundred components and two of them happen to be covered by the claims which he didn't even know and realize. Now that's a long ways from this case, isn't it? Where they have a stabilizer and they have a statin. And yes, they have another stabilizer along with it too. But they know that their stabilizer is working with the statin. What do they need? What is unrealized here? What's accidental that would make it fall within Invitrogen? The accidental portion here is that they are not doing it, for instance, with two stabilizers that will both be effective. They didn't just throw a bunch of ingredients in and something made it stabilized. What Teva discovered, the inventive subject matter, is that you can use a stabilizing effective amount of one and you don't need a stabilizing effective amount of anything else. And it's a particular compound that they're using or a class of compounds that they're using. And the reason this is similar to Invitrogen is that you have to appreciate the fact of what you made. You have to appreciate that you did have a stabilizing effective amount of A and not a stabilizing effective amount of anything else. And here it was an accidental, unintended appreciation. They think something else is performing the stabilization. And therefore, they don't appreciate the structural limitations of the claim. And inherency, moving away from the unintended for a moment, inherency should not be allowed to get them out of that because inherency only applies in limited, specific circumstances under Hitzman v. Rutter, which builds on the Silvestri case. And those circumstances are basically where it's redundant. It's not material to the claim. It's not material to patentability. But here, the whole point is that you had a stabilizing effective amount of A and not of B. And those are the structural limitations that lead to the property of stabilization. It's that the structural limitations lead to the property. That's Teva's contribution to the inventive subject matter. That's what was not appreciated. And that's what the district court let them out by finding those properties inherent. But this is not a molecular weight type inherent property. These were additional structural features. Would you like to save the rest of your rebuttal? Yes, thank you, Your Honor. Mr. Fuse. Thank you, Your Honor. May it please the Court. This Court should affirm the district court's summary judgment because AstraZeneca invented the accused formulations that is now sold as Crestor, and they did this before Teva's invention date. In essence, by suing the prior art, Teva invalidated its patent. Now, a little bit of the wind has been taken out of my argument today because Teva's counsel has conceded an identity of invention, which was not at least clear to me through the briefs. Well, you agree, don't you, that under 102G you've got to appreciate what you invented? I think the analysis under 102G, it was Heard and Langer and Silvestri and then carried on to the Federal Circuit cases, is you have to appreciate the fact that you have made an invention. You have to appreciate in those particular CCPA cases it was a new form of matter. The subject matter here is a formulation. So we had to appreciate that we made a new formulation, and we did. That's all? They wouldn't have to appreciate that it was a stabilizer? Well, there are additional tests for reduction of practice. Reduction of practice requires that you meet each limitation. No, but what's the answer to the question? Didn't they have to at least appreciate that they create a stabilizer? Yes, Your Honor, and what I'm trying to express is that the reduction of practice test says that you have to meet, as a matter of fact, the limitations of the claim, and you have to also understand that the invention worked for its intended purpose. The intended purpose of this invention is a formulation that is used to deliver a drug to a patient, and that's stable so that that formulation can be used to deliver the drug to the patient. And that is, in fact, what we did appreciate. I think that there's no requirement to appreciate that it's the cross-pulvidone that stabilizes the statin? Your Honor, the answer to that is I do not believe that that is the case. What we have here is we appreciated that we had it. The cross-pulvidone is claimed and is claimed as the stabilizing agent and a stabilizing amount of cross-pulvidone and nothing else to stabilize. Right. But in your formulation, the cross-pulvidone was used perhaps as a disintegrant but not necessarily as or not necessarily appreciated as a stabilizing agent. Am I correct? Your Honor, you are correct. Why doesn't that make a difference? Because our composition existed at the time that Teva found this, apparently, or at least on the summary judgment record, found this property that was inherent in that composition. I don't think that's an answer. The question is what do they have to appreciate? You say all they have to appreciate is that it worked as a stabilizer. They say you've got to appreciate which part of the compound acts as a stabilizer. Right. That's the issue here. It's not inherency. Well, inherency doesn't seem to me to get you anywhere. Well, there was a comment that the district court made and it looked at the 102B cases and it said that understanding a scientific explanation for the function. The 102B cases are different. You've got to stick with 102G, which requires not only that the compound be the same but that there be an appreciation that it works for its intended purpose. The question is whether the intended purpose here is stabilization or whether it's having a particular compound work as the stabilizer. I think the intended purpose of the claim that was asserted against us was to have a stabilized composition. I think that this situation is very analogous to the DuPont v. Phillips case where there had been a situation about a polymer and there was a question about whether certain property limitations of that polymer were met. And what happened in that case is this court sent it back down to the district court to determine, as a matter of fact, whether those properties were met. But it also said that the prior inventors did not have to appreciate or be aware that that prior composition possessed those physical properties. So I think the issue here is that the claim is directed to a stabilized pharmaceutical composition. We appreciated that we had a stabilized pharmaceutical composition and we appreciated that long before Tevis, dates of conception, reduction of practice. We're trying to decide what we mean by appreciation. Do you have to appreciate with great specificity or can you just have a general appreciation? Yes, we stabilized. Or do you have to appreciate we stabilized using this specific compound and none other? Our position, Your Honor, is that you do not have to appreciate essentially each limitation of Tevis' claim. You have to appreciate that your composition, which you conceived and reduced to practice, you had to essentially appreciate the fact of your invention. But you did not have to appreciate exactly, precisely how it worked. So the fact of the invention is what in this case? Simply having a stabilized statin? It's having a stabilized composition because the claim is directed to a composition. What you have to appreciate is the utility? Well, you have to appreciate that this composition will work for its intended purpose. Essentially what the utility of it is. Yes, Your Honor. And I would say that the notion that we have to appreciate in exact terms what Tevis has in their claim is fraught with issues about people claiming existing compounds existing compositions, existing articles, and saying, no, no, no, you don't understand how it works. It works differently. So we get to exclude that from the public domain. And in our case? Well, haven't they added to the public domain, if you want to bring that up? They've taught us that you only need one stabilizer and that strengthens our understanding of the parameters of stabilization and how it can work. Haven't they given us something? Don't they deserve what they've given us? I think that this case is a reflection of explaining a dual function of a common and long-existing polymer that might exist in the prior art. And, in fact, we have a composition that exists in the prior art, too. It's more akin to explaining a scientific You want to diminish it. Did they or did they not teach us something we didn't know? For the purposes of summary judgment, we'll have to concede that they have taught something. The question is whether or not their claim, whether that particular aspect of their claim has to be appreciated. What is the impact of their concession on infringement on the issue that we've been discussing? Well, under the reduction of practice test, you have to show, as a matter of fact, as was reflected in this Court's DuPont case, that the limitations of the claim are met. That's part of the reduction of practice test, and that has been conceded at the argument today. But it has nothing to do with appreciation. Appreciation is a different aspect of reduction of practice test, yes, Your Honor. Now, I would say that the notion that this case is analogous to in vitrogen seems to be an incredible stretch because that was an accidental anticipation case, as this questioning reflected. That's certainly not the case with us because this so-called accident we have been replicating since 1999, and we have done it millions and millions and millions of times. And we set out to make a stable formulation. We made it. We acknowledged it. We've stuck with it, and it's been all this period of time. As to Heitzman, there is a discussion in Heitzman about HERD and whether or not there is accidental anticipation. And one of the issues about Heitzman that I'd like to stress on this Court is that that was really a conception case because there was conception, there was alleged conception by Heitzman, conception reduction of practice by the other party, and then a reduction to practice by Heitzman later on. In Heitzman, this Court held that Heitzman's hope of obtaining that antigen in particulate form was not enough to establish a conception. And they also said, and this Court said, that it had not been shown that at that time, the alleged time of Heitzman's conception, there actually had been an expression of that antigen at all. That's very different from our case where we have made it and repeatedly made it, and we've continuously made it. Unless the Court has any further questions, I don't have anything else. Thank you, Mr. Fuse. Thank you very much. Mr. Blake, you have two and a half minutes. Your Honor, to specifically address the Court's question about what is required for appreciation. Appreciation requires clear and convincing evidence on the part of AstraZeneca that they had a definite and permanent idea of the particular solution to the problem at hand. Not just the general goal, but the definite and permanent idea of the particular solution. Not the general goal that you stabilize something, but what Teva contributed here is how you stabilize it. It is these structural features that lead to the stabilization. How it works. How it works. Well, that's the question, whether you have to appreciate how something works or just what it does. Respectfully, you do not have to appreciate just what it does in this particular instance because you're talking about a composition... Is it stabilization, what it does? Stabilization is what it does. And so it's stabilized. What more do they need? They need to understand in this situation with a composition claim like this that has structural limitations, that the structural limitations that are recited as part of Teva's invention, the particular solution that Teva came up with is what they need to appreciate. They didn't need to appreciate what their product did. They needed to appreciate the invention that Teva contributed to the public. And here that invention lays out specific limitations. Back to my kind of bonehead analysis. Did you really give us anything? They already had a perfectly stabilized product and it was working fine. Did you really give us anything? We contributed to the public a specific set of structural features that lead to stabilization. They could have stabilized it any of a number of ways. They didn't tell the public, by the way, until well after we did what they were doing. They didn't make that known. We were the first to bring it to the public's attention and we contributed to the public. This is the specific way among any number of ways that you could stabilize that we believe is inventive. And this is the inventive subject matter that we are claiming to have a stabilizing effect on this particular group of compounds that was not before appreciated and not other stabilizers among the choice. And that particular meat and bounds of the claim is the meats and bounds of our invention. That's what we gave the public. My time is out, so unless you have any additional questions. Thank you, Mr. Blake. Our next case is...